UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JUSTO BOLUA | § § | |
| VS. | § § | C. A. NO. G-07-500 |
| BP EXPLORATION AND PRODUCTION, INC., BP AMERICA, INC., AMEC GREYSTAR, L.L.C. AND GREYSTAR CORPORATION | § § § § § | Judge Sim Lake |

**PLAINTIFF'S RESPONSE TO DEFENDANTS BP EXPLORATION AND PRODUCTION AND BP AMERICA INC.'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JUSTO BOLUA, Plaintiff herein and pursuant to Rule 56, Federal Rules of Civil Procedure, files his Response to Defendants BP Exploration and Production and BP America Inc.'s Motion for Summary Judgment and in support thereof would respectfully show the Court as follows:

**I.
STATEMENT OF FACTS**

1.      Plaintiff, Justo Bolua, was injured on October 12, 2005 while working on the Matagorda Island 622-C, a fixed platform owned and operated by Defendants BP Exploration and Production and BP America, Inc. Mr. Bolua, an employee of SHRM Catering Services, Inc. d/b/a Eurest Support Services ("ESS"), was unloading grocery supplies from a skate caster assembly system on the deck of the platform when the skate caster assembly system failed and collapsed injuring his left distal bicep tendon, his foot, arms, wrists and body generally.[1] The skate caster assembly system had been constructed, maintained and/or set up by employees of Defendants BP Exploration and Production, Inc., BP America, Inc., AMEC-Greystar, L.L.C. and

---
[1] Plaintiff's Original Complaint on file herein.

Greystar Corporation to unload and transport foam containers of frozen food to the galley.[2]

2. A report of the incident was prepared by Mr. Bolua [3]and he was, thereafter, was sent ashore for medical treatment after the accident where it was determined that Mr. Bolua sustained a rupture to his left distal biceps tendon and needed surgery. Surgery was performed on October 17, 2005 by Peter D. Vizzi, M.D. in Lafayette, Louisiana.[4] Mr. Bolua was taken off of work duty status.

3. On October 18, 2005, Liberty Mutual Insurance Corporation sent a letter to ESS requesting information to process Mr. Bolua's worker's compensation claim. ESS responded by facsimile dated October 20, 2005.[5]

4. On October 26, 2006, undersigned counsel advised Lisa Parker at Liberty Mutual Insurance Corporation that Mr. Bolua was represented by counsel.[6]

5. On November 15, 2005, Dr. Vizzi prescribed occupational and hand therapy for Mr. Bolua, 2-3 times a week for 4-6 weeks.

6. By letter dated November 18, 2005, counsel for Plaintiff advised ESS that Mr. Bolua had retained the services of Smith & Hassler to represent him in his personal injury case. The letter, a true and correct copy of which is attached, requests that ESS "refrain from any other direct contact" with Mr. Bolua and to "direct all future phone calls and correspondence regarding

---

[2] See, Exhibit 1, BP Root Cause Analysis Report, dated October 17, 200; Exhibit 18 to the Deposition of Philip Fremin.

[3] See Exhibit 2, attached hereto; Exhibit 4 to the Deposition of Justo Bolua

[4] See Exhibit 3, attached hereto; records from the personnel file of Justo Bolua attached to the Deposition of Philip Fremin

[5] See Exhibit 4, attached hereto records from the personnel file of Justo Bolua attached to the Deposition of Philip Fremin

[6] See Exhibit 5, attached hereto

bodily to attention of undersigned counsel."[7]

8. On December 13, 2005, Dr. Vizzi prescribed physical therapy for Mr. Bolua, three (3) times a week for 4-6 weeks. On December 22, 2005, Mr. Bolua began physical therapy treatments at TIRR in Houston.

9 On January 24, 2006, Mr. Bolua returned to Lafayette to see Dr. Vizzi. Dr. Vizzi placed Mr., Bolua on light work, told him to continue his strengthening program and instructed him to return in six (6) weeks. Thereafter, Mr. Bolua changed treating physicians to Dr. Kenneth Berliner because he was closer his home in Houston.

10. Shortly thereafter, the worker's compensation carrier stopped Mr. Bolua's compensation benefits for failure to attend physical therapy on a regular basis.[8]

11. Despite the termination of Mr. Bolua's worker's compensation benefits, Mr. continued to see Dr. Berliner until November 11, 2006, Plaintiff was released to return to work with no restrictions by Dr. Kenneth Berliner.

12. On July 3, 2007, undersigned counsel sent a demand to BP Exploration and Production and BP America, Inc. for settlement of Mr. Bolua's claim. The letter demanded $375,000.00 in settlement.[9]

13. On July 30, 2007, counsel for Plaintiff received a facsimile from attorney Richard Schwartz acknowledging receipt of Plaintiff's demand letter. [10] Counsel for Plaintiff called Mr. Schwartz who advised that there may be indemnity rights or insurance coverage for this claim through a contractor.

---

[7] See Exhibit 6, attached hereto

[8] Mr. Bolua testified that he missed some doctor's appointments and physical therapy because his mother died. The workers' compensation carrier terminated his medical and indemnity benefits for failure to attend the prescribed therapy. Deposition of Justo Bolua at p. 135, lines 12-20.

[9] See Exhibit 7
[10] See Exhibit 8, attached hereto

3

14. On August 2, 2007, Mr. Schwartz sent a letter to Erin Meehan, President of SHRM Cater Services, Inc. demanding that SHRM defend and indemnity BP for Mr. Bolua's claim. Attached to this letter was a copy of Plaintiff's demand letter to BP.[11] The letter was received by SHRM on August 6, 2007.

15. Shortly after receipt of this letter, Erin Meehan advised Phillip Fremin, Vice President of Finance and Administration of the various demand letters. Mr. Fremin, thereafter, allegedly contacts Mr. Bolua or had Billy Webb, Director of Human Resources at ESS contact Mr. Bolua while he is offshore to discuss this matter.[12] They request that Mr. Bolua come into the office to discuss this matter when he gets off his tour of duty.

16. Although Mr. Fremin knew Mr. Bolua was represented by counsel, Fremin and Billy Webb meet with Mr. Bolua at the ESS office in Lafayette, Louisiana on August 15, 2007 to "discuss" his accident.[13] This is the first time since the accident of October 12, 2005 that either Mr. Fremin or Billy Webb attempt to talk to Mr. Bolua about his accident and injuries.[14]

17. There is a dispute as to the conversations that took place on August 15, 2007. Mr. Fremin testified that he asked Mr. Bolua how he was doing and if he had any complaints about BP. Mr. Bolua testified that they talked about how he was treated by the worker's compensation carrier and the fact that his workers' compensation benefits were stopped. He testified he was owed six (6) months back pay by workers' compensation. Mr. Bolua testified that Mr. Fremin

---

[11] See Exhibit 9, attached hereto.

[12] Mr. Bolua testified that Billy Webb called him. Deposition of Justo Bolua p. 134, line 3-7. Billy Webb testified that he called Mr. Bolua. Deposition of William Webb, p.9, line 25. Philip Fremin stated that he called Mr. Bolua and later stated that he couldn't remember if he called him.

[13] Deposition of Philip Fremin p. 12-14

[14] Mr. Fremin testified that the first time he talked to M. Bolua was after ESS received the BP demand for defense. Deposition of Philip Fremin p. 29,31, 36-37

left the room for a few minutes. When Fremin returned he told Mr. Bolua that he was owed $15,000 in back pay.[15] Defendants dispute that the offer was for back pay. Mr. Fremin testified that he believed Mr. Bolua was owed one (1) week back pay $1,500 to $2,000. The balance of the $15,000 was to make Mr. Bolua "whole."[16] The conversation took less than 30 minutes.

18.   Mr. Fremin immediately calls a lawyer in Lafayette who drafts a multi-page single spaced Release. The Release is delivered to ESS within an hour of the conversation.[17] Mr. Fremin, a non-lawyer, testified that he told Mr. Bolua that the Release, released all claims Mr. Bolua had against BP. Fremin and Webb leave the room so that Mr. Bolua could "read" the Release. Bolua signs the Release, without reading the document, relying on representations made to him that the he was settling his worker's compensation claim for back pay.[18]

19.   On October 4, 2007, Plaintiff files his Original Complaint against the Defendants BP Exploration And Production, Inc., BP America, Inc., AMEC-Greystar, L.L.C. and Greystar Corporation.

20.   On November 26, 2007, Mr. Fremin sent a letter to Mr. Bolua requesting that he return the $15,000 or dismiss his lawsuit.[19]

## II.

### SUMMARY OF THE DEFENDANTS' ARGUMENT

21.   Defendants argue that they are entitled to summary judgment as a matter of law

---

[15] Deposition of Justo Bolua at p. 136, lines 4-16.

[16] Deposition of Philip Fremin at p.15

[17] Mr. Fremin Testified that he called Mike Adley, a local lawyer, and requested a release be drawn up. It was prepared and delivered to ESS within an hour of their conversation. The release was drawn up as a "courtesy to ESS." ESS was not billed for the release. Deposition fo Philip Fremin p. 47 -48.

[18] Deposition of Justo Bolua, p.137, lines 17-24.

[19] Deposition of Philip Fremin, p. 15-16

because (a) Plaintiff "voluntarily and knowingly" executed a valid and enforceable release and settlement agreement which bars Plaintiff's claims and/or (b) that he ratified the agreement by not returning the $15,000.00 consideration after learning the true meaning of the papers.

## III.

## **SUMMARY JUDGMENT STANDARD**

22. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247-48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its

motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585-87, 106 S.Ct. at 1355-56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585-87, 106 S.Ct. at 1355-56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with `specific facts showing that there is a genuine issue for trial.'" *Id.* at 586-87, 106 S.Ct. at 1355-56 (quoting Fed.R.Civ.P. 56(e)). See, *Trosclair v. Chevron U.S.A., Inc.* 161 F.Supp.2d 739 (S.D. Tex. 2001).

## IV.

### EVIDENCE SUPPORTING PLAINTIFF'S RESPONSE

23. Plaintiff would show that there are genuine issues of material fact that preclude summary judgment in favor of Defendants as a matter of law. Plaintiff relies on the following evidence in his response to Defendants' Motion for Summary Judgment. The following evidence is attached hereto and incorporated herein in its entirety and/or is already on file with this Court and incorporated herein by specific reference.

1. Oral Deposition of Justo Bolua
2. Oral Deposition of Phillip Fremin
3. Oral Deposition of William Webb
4. Records of Justo Bolua

5. Letter dated July 3, 2007, from undersigned counsel to BP Exploration and Production and BP America, Inc. demanding $375,000.00 in settlement of Mr. Bolua's claim.

6. Letter dated July 30, 2007, BP's attorney, Richard Schwartz acknowledging receipt of Plaintiff's demand letter.

7. Letter dated August 2, 2007, from Richard Schwartz to Erin Meehan, President of SHRM Cater Services, Inc. demanding that SHRM defend and indemnity BP for Mr. Bolua's claim. Attached to this letter was a copy of Plaintiff's demand letter to BP.

8. The August 15, 2007 Receipt Release and Settlement Agreement

IV.

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

24.     Defendants assert that they are entitled to summary judgment based on its pleadings. Defendants Answer, however, does not set out all affirmative defenses they rely on in their Motion for Summary Judgment. As a general rule the movant's pleadings must support its Motion for Summary Judgment. See *National Treasury Employees Un. v. Heller*, 53 F. 1289, 1295 (D.C.CIR.1995). Defendants' Answer filed with this Court on November 1, 2007 does not allege as an "ratification" as an affirmative defense. The time has passed for amending pleadings. As such Defendants' Motion for Summary Judgment on the issue of ratification of the agreement should be denied.

V.

**ARUMENTS AND AUTHORITIES**

25.     Plaintiff would show the court that there are genuine issues material fact that preclude summary judgment in favor of defendants as a matter of law in that there is sufficient evidence that (1) Plaintiff was fraudulently induced into signing the Release, (2) that the contract for release was an adhesion contract and (3) there was no ratification of the release.

A. **The Release Was Subject To Avoidance On The Grounds Of Mistake, Fraud And Fraudulent Inducement**

26.     The evidence in this case will show that despite the fact that Philip Fremin knew Justo Bolua was represented by counsel, he set up a meeting with Justo Bolua after he received a copy of BP's demand for defense and indemnity with Plaintff's demand letter attached to find out what Mr. Bolua's "issues" were with ESS or BP. A meeting was held on August 15, 2007 between Justo Bolua, Philip Fremin and Billy Webb at ESS's office in Lafayette. During the meeting Mr. Bolua's "issues" were discussed, $15,000 was offered to Mr. Bolua without any negotiations; a release was drafted and signed in less than an hour.

27.     The evidence in this case will further show that Mr. Fremin "knowingly" failed to tell Mr. Bolua that (1) SHRM/ESS had received a demand for defense and indemnity from BP because of a demand letter from undersigned counsel demanding $375,000 in settlement of Mr. Bolua's claims,[20] (2) that pursuant to a contract between SHRM and BP, SHRM had to pay the cost to defend BP against any lawsuit filed by any of SHRM/ESS employees against BP [21](3) that the first $25,000 would come out of SHRM/ESS's pocket, (4) that Mr. Fremin's real motive was to maintain a good relationship with BP, cut ESS's costs and not lose BP's business[22] and (5) that BP represented 15% to 20% of ESS's business which translated to well over $1,000,000 in annual revenues to SHRM.[23]

28.     Furthermore, the evidence will show that neither Mr. Fremin nor Billy Webb explained the ramifications of the Release to Mr. Bolua.[24] They failed to tell Mr. Bolua who has

---

[20] Deposition of Billy web p. 24-25

[21] See Exhibit 6 to the deposition of Philip Fremin

[22] Deposition of Philip Fremin, p. 56
[23] Deposition of Philip Fremin, p/ 52-53.

[24] Deposition of Philip Fremin p. 93 - 94

a 10th grade education that the Release requires him (1) to fully satisfy any and all or other claims arising out of the payment of medial bills, including liens asserted by Medicare, Medicaid and any workers' compensation carrier (2) to be fully responsible for payment of any and all medical bills (3) to defend, indemnify and hold harmless all released parties from claims by any healthcare providers and/or lien holders.[25] Mr. Bolua's medical bills to date are $$25,292.73[26]

29. Finally, the evidence in this case will show that Justo Bolua did not understand the ramifications of the Release, but relied on and trusted the representations made by Philip Fremin. *Deposition of Justo Bolua at p. 137, lines 16-22; p. 139, lines 2-19.*

30. Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. *See, Haase v. Glazner,* 62 S.W.3d 795, 798 (Tex.2001). Fraud and fraudulent inducement require proof of a material misrepresentation that (1) was false; (2) was either known to be false when made or was asserted recklessly without knowledge of the truth and as an affirmative assertion; (3) was intended to be acted upon; (4) was relied upon; and (5) caused injury. *Fletcher v. Edwards,* 26 S.W.3d 66, 77 (Tex.App.-Waco 2000, pet. denied) (citing *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998)). The evidence before the Court shows that material misrepresentations were made to Justo Bolua which were false and that he acted upon them to his deteriment.

31. Under Texas law, a release is a contract and is subject to avoidance, on grounds such as fraud, mutual mistake or lack of consideration just like any other contract. *Loy v. Kuykendall,* 347 S.W.2d 726, 728 (Tex.Civ.App. - San Antonio 1961, writ ref'd n.r.e.) (treating release as a contract subject to rules governing construction thereof). Pursuant to the doctrine of

---

[25] Receipt Release and Settlement Agreement, Exhibit 7 to the Deposition of Philip Fremin

[26] See, Exhibit 12 attached hereto.

mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided. *See, e.g., ALG Enterprises v. Huffman,* 660 S.W.2d 603, 606 (Tex.App.- Corpus Christi 1983), *aff'd as reformed per curium,* 672 S.W.2d 230 (Tex.1984)., In Williams v. Gash, 789 S.W.2d 261, 264 (Tex.1990), a cased cited by Defendants in their Motion, the Supreme Court of Texas addressed whether a release should be avoided on the grounds of mutual mistake. The Supreme Court concluded that *"the question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the release, such as the knowledge of the parties at the time of signing concerning the injury, the amount of consideration paid, the extent of negotiations and discussions as to personal injuries, and the haste or lack thereof in obtaining the release."*[27] (Emphasis added).

32.     In the instant case, the "objective circumstances surrounding the execution of the release" show the disparity in the knowledge of the parties as to the circumstances surrounding the offer of payment, consequence of signing the Release, the amount of consideration paid, the extent of the "negotiations," the "haste" in obtaining the Release from Mr. Bolua and the amount of the consideration offered. These facts are as follows:  (1) Philip Fremin knew a demand for settlement of Mr. Bolua's injury claims had been made on the BP Defendants, (2) Philip Fremin knew that BP had made a demand on SHRM/ESS for defense and indemnity of Mr. Bolua's injury claim, (3) Mr. Fremin knew that it would cost SHRM/ESS at least the amount of their deductible $25,000.00 to defend BP, (4) Mr. Fremin knew that a lawsuit against one of their customers could result in loss of business, (5) Mr. Fremin knew $15,000.00 was less than the settlement demand and less than their insurance deductible, (6) Philip Fremin, who had the

---

[27] Id.

11

Release drafted, never explained the consequences of the Release to Mr. Bolua; i.e., having to pay liens medical bills and the workers' compensation lien out of $15,000 when the medical bills and liens far exceeded that amount (7) Mr. Bolua never intended to release all claims against the BP Defendants and others,[28] (8) Mr. Bolua was led to believe he was receiving back pay that workers' compensation failed to pay him,[29] and (9) the compensation due to Mr. Bolua for six(6)months back pay under workers' compensation would have been approximately $15,000.00.

33. Based on the foregoing, there are genuine issues of material fact as to the validity of the Release that preclude summary judgment as a matter of law.

**B. Mr. Bolua Ratified the Agreement by Not Returning the $15,000.00 Consideration after Learning the True Meaning of the Release Agreement**

34. Defendants assert that Mr. Bolua ratified the Release and Settlement Agreement by not returning the $15,000.00 consideration after learning the true meaning of the Release. As stated above, "ratification" is an affirmative defense which has not been pled by defendants. As a general rule the movant's pleadings must support its Motion for Summary Judgment. See *National Treasury Employees Un. v. Heller*, 53 F. 1289, 1295 (D.C.CIR.1995). Defendants' Answer filed with this Court on November 1, 2007 does not allege "ratification" as an affirmative defense. The time has passed for amending pleadings. As such Defendants' Motion for Summary Judgment on the issue of ratification of the agreement should be denied.

## CONCLUSION

A contract for release can only be valid if the parties have the intent, mutual understanding and desire to enter into the contract. Defendants rely upon a Release document

---

[28] Deposition of Justo Bolua p. 143, lines 11-15; p.145, lines19-25 to p. 146, lines 1-7.
[29] Deposition of Just Bolua p. 148, line 15-24. Even William Webb testified that Philip Fremin did not tell Mr. Bolua that the $15,000 was for settling his claims against BP. See, Deposition of William Webb, p. 60, lines 3-11.

that was drafted by SHRM/ESS's lawyer "as a favor." Plaintiff, without the advice of counsel, was presented a Release that was represented to him as only settling his back pay issue with SHRM/ESS's workers' compensation carrier. Plaintiff signed this document based on representations of Philip Fremin, a Vice-President in the company he worked for. These representations were material, made knowingly by Mr. Fremin within the intent to fraudulently induce Mr. Bolua into signing the Release and are defensible under Texas law. Accordingly, genuine issues of material fact exist as to Defendants' contentions, and therefore, Defendant's Motion for Summary Judgment should be denied.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court deny Defendants' Motion for Summary Judgment and for such other and further relief to which Plaintiff is justly entitled.

SMITH & HASSLER

_/s/ Francine J. Barton_
Francine J. Barton
State Bar No. 10462500
Fed. ID No. 3433
1445 N. Loop West, Ste. 700
Houston, Texas 77008
(713) 739-1250
(713) 864-7226 (fax)

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I certify that I sent a copy of the foregoing Response was sent to each party's attorney listed below on the 20th day of August, 2008 by hand delivery, facsimile and/or certified mail return receipt requested:

Michael D. Williams
Kenneth Baird
Brown Sims, P.C.
1177 West Loop South, 10th Floor
Houston, Texas 77027-9007

Robert D. Brown
Kyle D. Weynand
Donato, Minx & Brown, P.C.
3200 Southwest Freeway, Ste. 2300
Houston, TX 77027

_____
Francine J. Barton

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JUSTO BOLUA | § § § | |
| VS. | § § | C. A. NO. G-07-500 |
| BP EXPLORATION AND PRODUCTION, INC., BP AMERICA, INC., AMEC GREYSTAR, L.L.C. AND GREYSTAR CORPORATION | § § § § § | Judge Sim Lake |

## AFFIDAVIT

| | |
|---|---|
| THE STATE OF TEXAS | § |
| COUNTY OF HARRIS | § |

Before me, the undersigned authority, personally appeared, Francine J. Barton, who, being by me duly sworn, deposed as follows:

"My name is Francine J. Barton. I am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

"I am an attorney duly licensed by the State Bar of Texas to practice law in the State of Texas and have been duly licensed since May 1983. I am duly licensed to practice in the United States District Court for the Southern District of Texas. I am the attorney in charge for the Plaintiff in the above entitled and numbered cause."

"I have prepared the foregoing Response to Defendants' Motion for Summary Judgment. The facts contained therein are true and correct and within my personal knowledge."

"I have also prepared and/or copied the various Exhibits and documents attached to Plaintiff's Response to Defendant's Motion for Summary Judgment. These Exhibits were copied from documents produced to Plaintiff by Defendants through discovery reuqest, obtained by deposition on written question, or by subpoena duces tecum. These documents are true and correct copies of the documents produced and have ben authenticated by the witness or self-authenticating. None of the Exhibits or documents have been redacted, modified or altered in any way before attached them to Plaintiff's Response to Defendants' Motion for Summary Judgment."

"I have read the foregoing Affidavit and it is true and correct within my personal knowledge."

"Further Affiant Sayeth Not."

_____
Francine J. Barton

SWORN TO AND SUBSCRIBED before me on this 20th day of August, 2008.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

[Notary Seal: MALINDA S DAVIS, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES JULY 7, 2012]