IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JUSTO BOLUA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. G-07-0500 |
| BP EXPLORATION AND PRODUCTION, | § | |
| INC., BP AMERICA, INC., AMEC- | § | |
| GREYSTAR LLC, and GREYSTAR | § | |
| CORPORATION | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendants BP Exploration and Production, Inc. and BP America, Inc.'s (collectively "BP") Motion for Summary Judgment (Docket Entry No. 24), plaintiff Justo Bolua's Response to Defendants BP Exploration and Production and BP America Inc.'s Motion for Summary Judgment (Docket Entry Nos. 26, 27), BP's Reply in Further Support of Its Motion for Summary Judgment (Docket Entry No. 28), and Bolua's Response to Defendants BP Exploration and Production and BP America Inc.'s Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Docket Entry No. 35). Also pending before the court are defendants AMEC-Greystar, L.L.C. and Greystar Corporation's (collectively "Greystar") Motion for Summary Judgment (Docket Entry No. 30) and plaintiff Bolua's Response to Defendants AMEC-Greystar, L.L.C. and Greystar Corporation's Motion for Summary Judgment (Docket Entry No. 36). For the reasons stated below, BP's motion for summary judgment will

be granted, and Greystar's motion for summary judgment will be denied.

## I. **Background**

Justo Bolua was allegedly injured on or about October 12, 2005, while he was employed as a cook on the Matagorda Island 622-C, a fixed platform located in the Gulf of Mexico off the coast of Texas.[1]  The Matagorda Island 622-C is owned and operated by BP.[2] Greystar contracted with BP to maintain the platform.[3] At the time of his alleged injury, Bolua was employed by SHRM Catering Services, Inc. d/b/a Eurest Support Services ("Eurest").[4]

On the date when Bolua allegedly sustained his injuries, he was unloading grocery supplies from a skate caster assembly

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1 at 1; Defendant BP Exploration and Production and BP America, Inc.'s Motion for Summary Judgment (hereinafter "BP's Motion for Summary Judgment"), Docket Entry No. 24 at ¶ 1.1.

[2]BP's Motion for Summary Judgment, Docket Entry No. 24 at ¶ 1.1.

[3]See Master Operation and Maintenance Service Contract between BP America Production Company and AMEC-Greystar, LLC (included in Defendants AMEC-Greystar, L.L.C. and Greystar Corporation's Motion for Summary Judgment(hereinafter "Greystar's Motion for Summary Judgment"), Docket Entry No. 30 at Exhibit G).

[4]BP's Motion for Summary Judgment, Docket Entry No. 24 at ¶ 1.1; Plaintiff's Response to Defendants BP Exploration and Production and BP America Inc.'s Motion for Summary Judgment (hereinafter "Plaintiff's Response to BP's Motion for Summary Judgment"), Docket Entry Nos. 26, 27 at 1.

system.[5]  During the unloading operation the skate caster assembly system collapsed.[6]  Bolua alleges that the collapse caused injuries to his left distal bicep tendon, his foot, arms, wrists, and body.[7] Bolua underwent surgery on October 17, 2005, to repair his ruptured bicep tendon.[8]

Bolua subsequently retained counsel, and on July 3, 2007, his attorney sent a letter to BP demanding $375,000 to settle his claim against BP.[9]  On August 2, 2007, BP notified Eurest of Bolua's demand letter and demanded that Eurest defend and indemnify BP pursuant to an agreement between Eurest and BP in which Eurest agreed to "defend, indemnify and hold harmless BP from and against all claims, liabilities, damages and expenses, irrespective of insurance coverage, for the injury, death or illness of the employees of [Eurest] irrespective of the negligence of BP."[10]

---

[5]Plaintiff's Original Complaint, Docket Entry No. 1 at 3; BP's Motion for Summary Judgment, Docket Entry No. 24 at ¶ 1.1.

[6]Plaintiff's Original Complaint, Docket Entry No. 1 at 3; Incident Investigation & Root Cause Analysis Report at ii (included in Plaintiff's Response to BP's Motion for Summary Judgment, Docket Entry Nos. 26, 27 at Exhibit 1).

[7]Plaintiff's Original Complaint, Docket Entry No. 1 at 3-4.

[8]Plaintiff's Response to BP's Motion for Summary Judgment, Docket Entry Nos. 26, 27 at 2, Exhibit 3.

[9]See July 3, 2007, letter from Francine J. Barton to BP Exploration and Production, Inc.(included in Plaintiff's Response to BP's Motion for Summary Judgment, Docket Entry Nos. 26, 27 at Exhibit 7).

[10]See August 2, 2007, letter from Kenneth L. George to Erin D. Meehan(included in Plaintiff's Response to BP's Motion for Summary
(continued...)

After recovering from his injuries, Bolua returned to work for Eurest.[11]  In August of 2007, William Webb, the Director of Human Resources for Eurest, contacted Bolua while he was working off-shore and asked him to come to Eurest's office in Lafayette, Louisiana, when he completed his current off-shore assignment.[12] On August 15, 2007, Bolua went to the Eurest office in Lafayette as requested where he met with Webb and Philip Fremin, Eurest's Vice President of Finance and Administration.[13]  During this meeting Bolua signed a document entitled "Receipt, Release, and Settlement Agreement."[14]  The document stated that Bolua, in consideration for $15,000, agreed to release Eurest, BP, and

---

[10](...continued)
Judgment, Docket Entry Nos. 26, 27 at Exhibit 9).

[11]Videotaped and Oral Deposition of Justo Bolua at 121-22 (July 2, 2008) (included in BP's Motion for Summary Judgment, Docket Entry No. 24 at Exhibit A).

[12]Id. at 133-34; Oral and Video Deposition of William Nelson Webb at 6-8 (July 22, 2008) (included in Defendants' Reply in Further Support of Its Motion for Summary Judgment (hereinafter "BP's Reply in Further Support"), Docket Entry No. 28 at Exhibit B).

[13]BP's Motion for Summary Judgment, Docket Entry No. 24 at ¶ 1.1; Videotaped and Oral Deposition of Justo Bolua at 134-36 (July 2, 2008) (included in BP's Motion for Summary Judgment, Docket Entry No. 24 at Exhibit A); Oral and Video Deposition of William Nelson Webb at 7, 9 (July 22, 2008) (included in BP's Reply in Further Support, Docket Entry No. 28 at Exhibit B); Oral and Video Deposition of Philip Fremein [sic] at 16 (July 22, 2008) (included in BP's Reply in Further Support, Docket Entry No. 28 at Exhibit A).

[14]See Receipt, Release, and Settlement Agreement (included in BP's Motion for Summary Judgment, Docket Entry No. 24 at Exhibit B).

> all persons, parties and entities in privity with any of
> them, of and from any and all past, present and future
> claims, demands, causes of action and rights of action,
> whatsoever, known or unknown, anticipated and
> unanticipated, which may or might have resulted and/or to
> result from the accident which allegedly occurred on or
> about October 12, 2005 . . . .[15]

Bolua was given a check for $15,000, which he subsequently cashed.[16]

Bolua now contends that he did not read the document before signing

it, that only the final page of the document with the signature

line was given to him, and that he signed it only because Fremin

told him the $15,000 check was for unpaid worker's compensation

benefits and that the document was related to the unpaid worker's

compensation benefits.[17]

Fremin and Webb dispute Bolua's version of what occurred.

They assert that Fremin gave Bolua the entire document, explained

the release to Bolua before he signed it, and that Bolua was given

several minutes alone to read the entire document before signing

it.[18]

---

[15]<u>Id.</u>

[16]<u>See</u> BP's Motion for Summary Judgment, Docket Entry No. 24 at
Exhibit F.

[17]Videotaped and Oral Deposition of Justo Bolua at 133-50
(July 2, 2008) (included in BP's Motion for Summary Judgment,
Docket Entry No. 24 at Exhibit A).

[18]Oral and Video Deposition of Philip Fremein [sic] at 16-25
(July 22, 2008) (included in BP's Reply in Further Support, Docket
Entry No. 28 at Exhibit A); Oral and Video Deposition of William
Nelson Webb at 9-15 (July 22, 2008) (included in BP's Reply in
Further Support, Docket Entry No. 28 at Exhibit B).

On October 4, 2007, Bolua filed this action against BP and Greystar seeking damages allegedly arising out of the October 12, 2005, accident.[19]   Bolua asserted several causes of action, including negligence.[20]

BP answered on November 1, 2007, denying many of Bolua's allegations and raising various affirmative defenses, including the August 15, 2007, settlement and release.[21]   Greystar answered on November 5, 2007, similarly denying many of Bolua's allegations and pleading several affirmative defenses, but Greystar did not assert the defense of release.[22]

On November 26, 2007, Fremin sent a letter to Bolua reminding him of the release that he had signed.[23]   The letter encouraged Bolua to either drop his suit against BP and retain the $15,000 that had been paid to him or return the $15,000, in which case

_____

[19]See Plaintiff's Original Complaint, Docket Entry No. 1.

[20]Id.

[21]See Defendants BP America Inc.'s and BP Exploration and Production Inc.'s Answer to Plaintiff's Original Complaint, Docket Entry No. 4.

[22]See Defendants AMEC Greystar, L.L.C. and Greystar Corporation's Original Answer to Plaintiff's Complaint and Affirmative Defenses, Docket Entry No. 5.

[23]See November 26, 2007, letter from Philip Fremin to Justo Bolua (included in BP's Motion for Summary Judgment, Docket Entry No. 24 at Exhibit D).

Fremin agreed to "send to [Bolua's] attorney the original release."[24]

BP and Greystar have moved for summary judgment asserting that they were released from liability by the settlement agreement signed by Bolua on August 15, 2007, and that he is therefore barred from now suing them based on the October 12, 2005, incident.[25]  In response, Bolua contends that BP's pleadings do not set out the affirmative defense of ratification of the agreement and that Greystar's pleadings fail to raise either the defense of release or ratification.[26]  Bolua also contends that there are genuine issues of material fact as to whether the release was validly entered into and/or executed, and whether it is enforceable.[27]

---

[24]<u>Id.</u>

[25]BP's Motion for Summary Judgment, Docket Entry No. 24; Greystar's Motion for Summary Judgment, Docket Entry No. 30.

[26]Plaintiff's Response to BP's Motion for Summary Judgment, Docket Entry Nos. 26, 27 at 8; Plaintiff's Response to Defendants BP Exploration and Production and BP America Inc.'s Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (herinafter "Plaintiff's Response to BP's Reply"), Docket Entry No. 35 at 9; Plaintiff's Response to Defendants AMEC-Greystar, L.L.C. and Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 36 at 7.

[27]Plaintiff's Response to BP's Motion for Summary Judgment, Docket Entry Nos. 26, 27 at 8-12; Plaintiff's Response to BP's Reply, Docket Entry No. 35 at 1-9; Plaintiff's Response to Defendants AMEC-Greystar, L.L.C. and Greystar Corporation's Motion for Summary Judgment, Docket Entry No. 36 at 7-11.

## II. <u>Summary Judgment Standard</u>

Summary judgment is warranted if the movant establishes that there is no genuine dispute about any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). An examination of substantive law determines which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). Material facts are those facts that "might affect the outcome of the suit under the governing law." <u>Id.</u>  A material fact creates a genuine issue if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor. <u>Id.</u> at 2511.

The movant must inform the court of the basis for summary judgment and identify relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate there are no genuine fact issues. <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986); <u>see also</u> <u>Wallace v. Tex. Tech Univ.</u>, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  "For a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's essential elements." <u>Bank of Louisiana v. Aetna U.S. Healthcare Inc.</u>, 468 F.3d 237, 241 (5th Cir. 2006).  If the movant makes this showing, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that summary judgment is not warranted because genuine fact issues exist. <u>Celotex Corp.</u>, 106 S. Ct. at

2552.    Conclusory   claims,   unsubstantiated   assertions,   or
insufficient  evidence  will  not  satisfy  the  nonmovant's  burden.
Wallace,  80  F.3d  at  1047.    If  the  nonmovant  fails  to  present
specific  evidence  showing  there  is  a  genuine  issue  for  trial,
summary  judgment  is  appropriate.    Topalian v. Ehrman,  954  F.2d
1125, 1132 (5th Cir. 1992).   In reviewing the evidence "the court
must  draw  all  reasonable  inferences  in  favor  of  the  nonmoving
party, and it may not make credibility determinations or weigh the
evidence."  Reeves v. Sanderson Plumbing Products Inc., 120  S.  Ct.
2097, 2110 (2000).

### III. Applicable Law

The  court  has  jurisdiction  pursuant  to  the  Outer  Continental
Shelf Lands Act (OCSLA).   See 43 U.S.C. § 1349(b)(1).  "The [OCSLA]
provides  comprehensive  choice-of-law  rules  .  .  .  ."   Demette v.
Falcon Drilling Co., Inc., 280 F.3d 492, 495 (5th Cir. 2002).   In
actions brought under the OCSLA, "federal law governs . . . to the
extent that there is applicable federal law; however, if there is
a gap in the federal law, the law of the adjacent state is used as
a gap-filler and becomes surrogate federal law."  Bartholomew v.
CNG Producing Co., 862 F.2d 555, 557 (5th Cir. 1989).   See also
43 U.S.C. § 1333(a)(2)(A).   In order for state law to be applied as
surrogate   federal   law,   three   conditions   must   be   satisfied:
"'(1) The controversy must arise on a situs covered by OCSLA (i.e.
the  subsoil,  seabed,  or  artificial  structures  permanently  or
temporarily attached thereto). (2) Federal maritime law must not

9

apply of its own force. (3) The state law must not be inconsistent with [f]ederal law.'" <u>Strong v. BP Exploration & Production, Inc.</u>, 440 F.3d 665, 668 (5th Cir. 2006) (quoting <u>Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.</u>, 895 F.2d 1043, 1047 (5th Cir. 1990)).

The release at issue in this case related to and arose from the incident that occurred on October 12, 2005, on the Matagorda Island 622-C.  Based on the description provided by the parties, the Matagorda Island 622-C is apparently a fixed platform located on the outer Continental Shelf adjacent to the coast of Texas.[28] Therefore, it is a situs covered by OSCLA.  <u>See</u> 43 U.S.C. § 1333(a)(1).  Additionally, federal admiralty law does not apply. <u>See</u> <u>Rodrigue v. Aetna Cas. & Sur. Co.</u>, 89 S. Ct. 1835, 1839-42 (1969) (holding that under OCSLA federal admiralty law does not apply to accidents occurring on fixed offshore drilling platforms, and therefore, that state law governs); <u>Coulter v. Texaco, Inc.</u>, 117 F.3d 909, 911 (5th Cir. 1997) ("The [OCSLA] mandates that when disputes arise involving fixed structures erected on the outer Continental Shelf, applicable laws of the adjacent state will be applied to the extent not inconsistent with other federal laws and regulations.").  Accordingly, Texas contract law governs the release.

---

[28]Plaintiff's Original Complaint, Docket Entry No. 1 at ¶ 1; Defendants BP America Inc.'s and BP Exploration and Production Inc.'s Answer to Plaintiff's Original Complaint, Docket Entry No. 4 at ¶ 10; BP's Motion for Summary Judgment, Docket Entry No. 24 at ¶¶ 1.1, 5.3; Greystar's Motion for Summary Judgment, Docket Entry No. 30 at ¶¶ 1, 14.

# IV. Analysis

## A.   BP's Motion for Summary Judgment

BP asserts that it is entitled to summary judgment because Bolua, in exchange for consideration of $15,000, executed a valid and enforceable settlement agreement, which expressly released BP of all liability for any damages that Bolua might have incurred as a result of the October 12, 2005 incident.[29]   Alternatively, BP asserts that even if the settlement agreement was not initially valid or enforceable, it has since been ratified by Bolua because he has retained the $15,000 that he received in consideration for entering into the agreement after learning of the terms of the agreement.[30]   BP points out that Eurest gave Bolua the opportunity to rescind the agreement by returning the $15,000, but Bolua declined.[31]

Bolua contends that there are fact issues as to whether the settlement agreement is invalid because there was no meeting of the minds and/or as to whether the agreement is unenforceable under the doctrines of fraud, fraudulent inducement, misrepresentation,

---

[29]BP's Motion for Summary Judgment, Docket Entry No. 24 at ¶¶ 1.1, 5.1-5.7.

[30]BP's Motion for Summary Judgment, Docket Entry No. 24 at ¶¶ 1.2, 5.8-5.10.

[31]BP's Motion for Summary Judgment, Docket Entry No. 24 at ¶¶ 1.2, 5.10.

and/or mutual mistake.[32]  With regard to BP's assertion that Bolua subsequently ratified the agreement, Bolua argues only that BP may not assert ratification because it did not raise the defense of ratification in its pleadings.[33]

As explained below, the court concludes that BP's pleadings are adequate to support summary judgment on the ground of ratification of the settlement agreement and that Bolua ratified the agreement.  Therefore, the court need not address whether the settlement agreement was initially valid or enforceable.

### 1. BP's Pleadings

Bolua asserts that BP's answer does not allege ratification as an affirmative defense, and thus, that it may not be relied upon by BP as a ground for summary judgment.[34]  Federal Rule of Civil

---

[32]Plaintiff's Response to BP's Motion for Summary Judgment, Docket Entry Nos. 26, 27 at 9-12; Plaintiff's Response to BP's Reply, Docket Entry No. 35 at 1-9.

[33]Plaintiff's Response to BP's Motion for Summary Judgment, Docket Entry Nos. 26, 27 at 12; Plaintiff's Response to BP's Reply, Docket Entry No. 35 at 9.

[34]Bolua contends that "[a]s a general rule the movant's pleadings must support its Motion for Summary Judgment." Plaintiff's Response to BP's Motion for Summary Judgment, Docket Entry Nos. 26, 27 at 8.  In support of this proposition, Bolua cites National Treasury Employees Union v. Helfer, 53 F.3d 1289, 1295 (D.C. Cir. 1995).  Helfer involved a suit under the Administrative Procedure Act by members of the National Treasury Employees Union (NTEU) to challenge regulations issued by the Office of Personnel Management (OPM).  Nat'l Treasury Employees Union v. Helfer, 53 F.3d 1289, 1290 (D.C. Cir. 1995).  The district court had granted summary judgment on behalf of the OPM, thus upholding the challenged regulations.  Id.  The D.C. Circuit affirmed the district court's grant of summary judgment and specifically affirmed the district court's refusal to consider the
(continued...)

Procedure 8(c) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: [19 specific affirmative defenses]." Fed. R. Civ. P. 8(c).  Although ratification is not one of the affirmative defenses specifically listed in Rule 8(c), see id., it is an affirmative defense under Texas law.  Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc., 609 S.W.2d 754, 756 (Tex. 1980).  If a party does not plead an affirmative defense as required by Rule 8(c), the party is generally deemed to have waived that defense. Lucas v. United States, 807 F.2d 414, 417 (5th Cir. 1986).

But a defense is not waived if the defendant raises the defense "'at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'"  Id. at 418 (quoting Allied Chem. Corp. v. Mackay, 695 F.2d 854, 856 (5th Cir. 1983)) (alterations in original).

Moreover, "[t]he pleading of affirmative defenses is governed by the same liberal pleading standards as those for a complaint." Marine Overseas Servs., Inc. v. Crossocean Shipping Co., 791 F.2d

---

<sup>34</sup>(...continued)
NTEU's argument that subsequent revisions to the challenged regulations were also invalid. Id. at 1295.  The district court refused to consider the validity of the revised regulations because they were not mentioned or challenged in the NTEU's original complaint.  Id.  The court also affirmed the district court's refusal to allow the NTEU to amend its complaint to include a challenge to the revised regulations. Id. at 1295.  Since the NTEU was the non-moving party, id. at 1290, the case does not stand for the proposition that a movant's pleadings must support its motion for summary judgment.  The court has not discerned such a general rule from any other authority.

1227, 1233 (5th Cir. 1986) (citing 5C Charles Alan Wright & Arthur R. Miller, _Federal Practice and Procedure_, § 1274 at 323 (1st ed. 1969)).  Therefore, pleadings raising affirmative defenses are to be "simple, concise, and direct." Fed. R. Civ. P. 8 (d)(1); _Marine Overseas_, 791 F.2d at 1233.  As long as the other party is given "fair notice" of the pleader's defense, the defense has been sufficiently pleaded.  _See_ _Swierkiewicz v. Sorema N.A._, 122 S. Ct. 992, 998 (2002); _Marine Overseas_, 791 F.2d at 1233.

Because the rules institute a simple notice pleading standard, courts rely on discovery and summary judgment motions to more clearly "define disputed facts and issues." _Swierkiewicz_, 122 S. Ct. at 998.  The court must be mindful of the fact that "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." _Id._ at 997-98.  Thus, pleadings must be "construed so as to do justice." Fed. R. Civ. P. 8(e).

A plaintiff, when filing a complaint, is not expected to anticipate and counter defenses that might be raised by the defendant. _See_ _Abbas v. Dixon_, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure, however, do not compel a litigant to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses.") (citing _Jones v. Bock_, 127 S. Ct. 910, 920 (2007)); _Simpson v James_, 903 F.2d 372, 375 (5th

14

Cir. 1990) (rejecting the defendants' argument that the plaintiffs waived the benefit of the discovery rule because they failed to plead it in their complaint in anticipation of the defendants raising the statute of limitations as an affirmative defense). Likewise, a defendant should not be required to anticipate at the pleading stage a plaintiff's response to the defendant's affirmative defenses.

Bolua signed the settlement agreement on August 15, 2007, and filed suit on October 4, 2007.  BP filed its answer on November 1, 2007.  In its answer BP asserted the defense of release based upon Bolua's execution of the settlement agreement.  Only later, through the discovery process, did it became apparent that Bolua would contest the validity and enforceability of the settlement agreement.[35]  BP is not required to have anticipated Bolua's response to its affirmative defense of release at the pleading stage.

Furthermore, as of November 1, 2007, the events that BP asserts form the factual basis for ratification may not have yet occurred or were only beginning to occur.  Ratification requires that the ratifying party have full knowledge of the material facts related to the agreement ratified.  Motel Enters., Inc. v. Nobani, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ).

---

[35]Bolua was not deposed until July 2, 2008.  Videotaped and Oral Deposition of Justo Bolua at 1 (July 2, 2008) (included in BP's Motion for Summary Judgment, Docket Entry No. 24 at Exhibit A).

In his deposition, Bolua stated that he did not learn that the agreement he had signed purported to release BP from liability until his attorney contacted him about it.[36]   Bolua was uncertain of the exact date of this conversation, remembering only that it occurred sometime between August 15, 2007, and November 26, 2007.[37] Bolua's attorney, however, did not request a copy of the settlement agreement from Eurest until October 31, 2007, only one day before BP filed its answer.[38]   Moreover, it was not until November 26, 2007, that Eurest sent a letter to Bolua explaining the general terms of the settlement agreement and giving him the opportunity to return the $15,000 in order to rescind the agreement.   Therefore, it would be unreasonable to require BP to have pleaded the theory of ratification on November 1, 2007, when it filed its answer.

BP pleaded the defense of release based on the August 15, 2007, settlement agreement.   This was sufficient to give Bolua "notice of the theories on which [BP's defense] is based." Simpson, 903 F.2d at 375.   Moreover, BP raised the defense of ratification in its motion for summary judgment, which under the circumstances, was "a pragmatically sufficient time, and [the plaintiff] was not prejudiced in [his] ability to respond." Lucas,

---

[36]Videotaped and Oral Deposition of Justo Bolua at 140 (July 2, 2008) (included in BP's Motion for Summary Judgment, Docket Entry No. 24 at Exhibit A).

[37]Id. at 142-43.

[38]Oral and Video Deposition of Philip Fremein [sic] at 102 (July 22, 2008) (included in BP's Reply in Further Support, Docket Entry No. 28 at Exhibit A).

807 F.2d at 418 (first alternation in original).  Therefore, BP may assert ratification of the agreement as a ground for summary judgment.

    2. <u>Ratification and Release</u>

If a release is initially voidable, it, like any voidable contract, may be ratified by subsequent acts of the releasor.  <u>See Barker v. Roelke</u>, 105 S.W.3d 75, 86-87 (Tex. App.—Eastland 2003, pet. denied) (holding that the appellant ratified a release which was potentially voidable because of mutual mistake and/or misrepresentation).  A party seeking to establish ratification must demonstrate that the ratifying party (1) approved the agreement by act, word, or conduct, (2) with full knowledge of all material facts related to the agreement, (3) with the intention of giving validity to the agreement.  <u>Nobani</u>, 784 S.W.2d at 547.

Ratification may be implied from the ratifying party's course of conduct.  <u>Petroleum Anchor Equip., Inc. v. Tyra</u>, 419 S.W.2d 829, 834 (Tex. 1967); <u>Simms v. Lakewood Village Prop. Owners Ass'n, Inc.</u>, 895 S.W.2d 779, 785 (Tex. App.—Corpus Christi 1995, no writ).  Any act engaged in by the ratifying party, having knowledge of all material facts, that is inconsistent with an intent to avoid a contract constitutes a ratification of the contract.  <u>Barrand, Inc. v. Whataburger, Inc.</u>, 214 S.W.3d 122, 146 (Tex. App.—Corpus Christi 2006, pet. denied).  Texas courts have held that the retention of the consideration received in exchange for a release after the releasor learns of the material facts regarding the release amounts

17

to a ratification, even if the release was initially entered into only because of a misrepresentation or mistake.  See, e.g., Texas & Pac. Ry. Co. v. Poe, 115 S.W.2d 591, 592 (Tex. 1938); Barker, 105 S.W.3d at 86.

Bolua admitted in his deposition that after signing the agreement and taking the $15,000 check, he was informed that it was a settlement and release agreement.[39]  Bolua further admitted that by November 26, 2007, or shortly thereafter, Bolua had both spoken with his attorney about the terms of the agreement, and had received a letter from Philip Fremin of Eurest that stated that the agreement constituted a release.[40]  Thus, by November 26, 2007, or shortly thereafter, Bolua had full knowledge of the material terms of the agreement and that it released BP.  Additionally, assuming that Bolua's version of the events surrounding the execution of the

---

[39]Videotaped and Oral Deposition of Justo Bolua at 138, 141-143 (July 2, 2008) (included in BP's Motion for Summary Judgment, Docket Entry No. 24 at Exhibit A).

[40] Id. at 141-43. In the letter from Fremin to Bolua, Fremin explained:

> We agreed to a settlement.  At this point, you mentioned that you would not pursue [Eurest] or BP in legal actions.  You even said you would try to find the attorney you had not spoken to in over a year to tell her about your settlement and that she was not to take any further action on your behalf.  I then called a local firm in Lafayette to prepare a release. . . . When the release arrived, you looked at it and signed it.  You accepted $15,000 for the settlement.

See November 26, 2007, letter from Philip Fremin to Justo Bolua(included in BP's Motion for Summary Judgment, Docket Entry No. 24 at Exhibit D).

18

agreement is accurate, Bolua had full knowledge of the facts that may have initially rendered the agreement invalid or voidable.[41] Yet, Bolua admittedly retained the benefit of the settlement agreement, even after Eurest offered to rescind the agreement if Bolua would return the $15,000.[42] Bolua's conduct is clearly an act inconsistent with the intent to avoid the contract. Therefore, based on the undisputed evidence, even if the settlement agreement was initially invalid or unenforceable, Bolua has implicitly ratified it.

The settlement agreement releases BP from all liability arising from the October 12, 2005 incident. The claims that Bolua asserts in this law suit are "clearly within the subject matter of the release," Victoria Bank & Trust Co. v. Brady, 811, S.W.2d 931, 938 (Tex. 1991), and the agreement was supported by adequate consideration. See Torchia v. Aetna Cas. and Sur. Co., 804 S.W.2d 219, 223 (Tex. App.—El Paso 1991, writ denied) ("[A]ny consideration, however slight in amount, is sufficient by the person giving the release."). Therefore, Bolua is barred from enforcing the claims asserted in this action against BP. See Trinity Indus., Inc. v. Ashland, Inc., 53 S.W.3d 852, 868 (Tex. App.--Austin 2001, pet. denied) ("A release extinguishes a claim or

---

[41]See Videotaped and Oral Deposition of Justo Bolua at 138, 145-46 (July 2, 2008) (included in BP's Motion for Summary Judgment, Docket Entry No. 24 at Exhibit A) (explaining why he believed that the agreement was not valid).

[42]Id. at 141-45.

cause of action and bars recovery on the released matter.").
Accordingly, BP is entitled to summary judgment.

**B.  Greystar's Motion for Summary Judgment**

Greystar asserts that it is covered by the same settlement and
release agreement upon which BP relies as its basis for summary
judgment.  Specifically, Greystar points out that the agreement
stated that Bolua released Eurest, BP "and entities in privity with
any of them . . . ."[43]  Because Greystar was in privity with BP
through a maintenance and operations contract related to the
Matagorda Island 622-C,[44] Greystar reasons that it too was released
from liability by Bolua's execution or ratification of the
agreement.[45]

In response, Bolua argues that the release was invalid and/or
unenforceable.[46]  Alternatively, Bolua asserts that Greystar may not

---

[43]Receipt, Release, and Settlement Agreement (included in
Greystar's Motion for Summary Judgment, Docket Entry No. 30 at
Exhibit B).

[44]See Master Operation and Maintenance Service Contract between
BP America Production Company and AMEC-Greystar, LLC (included in
Greystar's Motion for Summary Judgment, Docket Entry No. 30 at
Exhibit G).

[45]Greystar's Motion for Summary Judgment, Docket Entry No. 30
at 7-8.

[46]Plaintiff's Response to Defendants AMEC-Greystar, L.L.C. and
Greystar Corporation's Motion for Summary Judgment, Docket Entry
No. 36 at 8-11.

rely on the defenses of release and/or ratification because it did not assert either of the two defenses in its pleadings.[47]

Under Texas law a release agreement only releases the parties that are specifically named or identified in the agreement. See McMillen v. Klingensmith, 467 S.W.2d 193, 196 (Tex. 1971) ("The rule is a simple one.  Unless a party is named in a release, he is not released.").  To determine whether a party is named or identified in a release agreement, Texas courts ask whether "the release is so particular that a stranger could readily identify the released party." Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 419 (Tex. 1984) (internal quotation marks omitted).  An agreement naming a general class of tortfeasors does not discharge the liability of each member of the class.  Id. at 419-20.  Instead, a release must describe a tortfeasor with such particularity that its identity is not in doubt.  Id. at 420.

Applying these rules, the Texarkana Court of Appeals held that a release agreement purporting to release a specifically named employee and "all other persons, firms, or corporations, or their agents, servants, or employees, in privity with" the employee was not specific enough to release the employee's employer, although the employer and employee were indisputably in privity. Johnston Invs., Inc. v. Christiansen, 952 S.W.2d 12, 14 (Tex. App.—Texarkana 1997, writ denied).  The "in privity with" provision of the

---

[47]Id. at 7, 12.

settlement agreement in this case is virtually indistinguishable from the provision in the Christiansen case. See id. Moreover, the provision is not specific enough to enable a stranger to the agreement to identify Greystar as a party covered by the agreement. See Duncan, 665 S.W.2d at 419. Therefore, even assuming arguendo that Greystar has not waived the defenses of release and/or ratification by failing to raise either of them in its pleadings,[48] Greystar has failed to establish that it was covered by the release. Its motion for summary judgment will therefore be denied.

## V.   **Conclusion and Order**

Based on the foregoing analysis, defendants BP Exploration and Production, Inc. and BP America, Inc.'s Motion for Summary Judgment (Docket Entry No. 24) is **GRANTED** and defendants AMEC-Greystar, L.L.C. and Greystar Corporation's Motion for Summary Judgment (Docket Entry No. 30) is **DENIED**.

**SIGNED** at Houston, Texas, on this 20th day of October, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[48]See supra Part IV.A.1 (discussing Federal Rule of Civil Procedure 8(c) and waiver of affirmative defenses).